IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY BALLARD, | : | |
| Petitioner, | : | 1:15cv-0236 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WARDEN JUAN BALTAZAR, | : | |
| Respondent. | : | |

**MEMORANDUM**

May 16, 2016

Presently before the court is a petition for writ of habeas corpus (Doc. 1)

pursuant to 28 U.S.C. § 2241, filed by Petitioner Anthony Ballard ("Petitioner" or

"Ballard"), an inmate incarcerated at the Low Security Correctional Institution at

Allenwood, White Deer, Pennsylvania.  He contends that his due process rights

were violated during the course of a prison disciplinary proceeding conducted at

the Federal Prison Camp in Lewisburg, Pennsylvania on September 13, 2013.  The

petition is ripe for disposition and, for the reasons that follow, will be denied.

I.      **BACKGROUND**

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined

in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011).

These regulations dictate the manner in which disciplinary action may be taken

should a prisoner violate, or attempt to violate, institutional rules.  The first step

requires filing an incident report and conducting an investigation pursuant to 28

C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  *Id.*  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing.  *Id.*  Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits.  28 C.F.R. § 541.3.

On September 13, 2013, Ballard was served with an incident report charging him with Code 111A – Attempted Introduction of Narcotics, and Code 196 – Use of the Mail to Further Criminal Activity, a Greatest Severity category offense.  The report contained the following description of the incident:

> On September 13, 2013, at 12:00 pm, an investigation concluded on August 19, 2013, inmate Anthony Ballard, #43269-037, mailed a letter to Queenie Brown, 21 Boyd Ave, Jersey City, New Jersey, 07304 stating the following:  "V, This is Anthony.  I need you to let me know the prices of those good fruits.  I'm trying to get 1. Blueberries; 2. Sour Diesel; and 3. Chronic.  I need to get prices that give me room to operate. If there is something else available for a good number that will fly. I need that too.  I'm going to hit you on the

google number and ask you the numbers 1, 2 & 3 and you can just let me know the numbers.  Plus I want to know just for old times sake the numbers of those BIG chickens too.  Stay safe man.  Talk to you soon.  Anthony."  An internet search verified "blueberries", "Sour Diesel", and "Chronic" are types of marijuana.  Writing samples from both his Central File and papers found in his assigned cubicle match the hand writing of the letter.  The letter was returned to sender on August 24, 2013, by the USPS with a stamp stating, "return to sender, attempted not known unable to forward."

(Doc. 9-2, p. 12).

Ballard made no comments during the UDC review.  (*Id.* at 13).  The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") due to the seriousness of the charges and recommended appropriate sanctions and transfer to a secure facility.  (*Id.*)  Ballard refused to sign the Inmate Rights at Discipline Hearing.  (*Id.* at 23).

At the DHO hearing held on September 23, 2013, Ballard waived his right to staff representation, did not request witnesses, and did not present documentary evidence.  (*Id.* at 25).  He admitted the charges in his inmate statement summarized by the DHO as follows:  "Inmate Ballard acknowledged he understood his rights before the DHO and was ready to proceed with the hearing.  [He] presented no documents for the DHO to consider.  [He] testified that Section 11 of the incident report is accurate.  Inmate Ballard testified, I apologize for what I did.  Thank you.  [He] made no complaints of procedural errors during the

hearing." (*Id.*)  In addition to the incident report and the investigation, the DHO

considered the following documentary evidence:

1. Handwritten letter written by inmate Ballard contained inside of an envelope addressed to [ ], that was returned to the institution by the U.S. Postal Service.

2. Internet search information that substantiates inmate Ballard wrote a letter soliciting Marijuana, specifically marijuana with the street names Chronic, Sour Diesel, and Blueberry.

3. Handwriting samples obtained by the reporting officer, that were compared to the handwriting contained in the aforementioned handwritten letter that inmate Ballard wrote to [ ] and an individual by the name of "V".

4. Federal Bureau of Prisons TRULINCS commissary transactions report found in inmate Ballard's property that substantiates he received money from an individual named "[ ]".

5. Federal Bureau of Prisons TRUVIEW reports that substantiates inmate Ballard received money from individuals by the name of "[ ]" and [ ] from [ ], Las Vegas, NV.

6. Federal Bureau of Prisons TRUVIEW Inmate Center Visitor List Report, where inmate Ballard has an individual by the name of "[ ]" listed as a friend on his visiting list.

7. Inmate Investigative Report dated 09-04-2013 ….

(*Id.* at 26).

Based on Ballard's statement and the above evidence, the DHO arrived at

the following findings:  "Ballard…wrote an outgoing letter to Ms. [ ] and Mr. [ ]

asking for them to find a marijuana supplier with good prices to give him room to

make a profit.  Since Ballard's release date is currently 2023, it is clear he intended

to introduce and sell marijuana while housed at the camp.  He admitted the hand

writing on the envelope was his, but denied writing the letter.  Writing samples

obtain from both his Central File and his personal papers found in his cubicle

match the writing on the letter as well as the envelope.  Furthermore, inmates

housed at camps are allowed by policy to seal their mail whereby if this letter was

not returned to sender, he would have been successful."  (*Id.* at 27, 28).   The

DHO then concluded that Ballard committed Prohibited Act Code 196, "Use of the

Mail for Illegal Purposes, while incarcerated at FPC Lewisburg on 08-19-2013."

(*Id.* at 28).

In sanctioning him with a disallowance of forty-one days of good conduct

time, sixty days disciplinary segregation, and six months loss of telephone,

visiting, and contact privileges the DHO reasoned as follows:

> Inmates who circumvent mail monitoring procedures in a correctional
> facility hamper the ability of staff to maintain the security and good
> order of the institution.  The rationale for the sanctions imposed in this
> case, therefore, is to punish the inmate for his misconduct, which is
> viewed as having an adverse effect on the security and orderly
> operation of the institution, as well as to deter future misconduct.
> Disciplinary segregation is in imposed as a punishment for the
> misconduct.  Disallowance of Good Conduct Time is imposed to
> demonstrate that engaging in misconduct will prolong Ballard's
> period of incarceration.  Loss of telephone and visiting privileges are
> imposed to demonstrate that engaging in misconduct will result in the
> loss of pleasurable privileges while incarcerated.

(*Id.* at 28).

After exhausting all available administrative avenues of review, Ballard filed the instant petition.  (Doc. 1, pp. 6, 7).

## II.   DISCUSSION

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.   Because federal inmates possess a liberty interest in good conduct time, *see Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991), a sanction of loss of that time requires that the inmate receive the following due process protections:  1) written notice of the claimed violation at least twenty-four hours in advance of a hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  *See Wolff*, 418 U.S. at 564-72.  Ballard concedes that the requirements of *Wolff* were satisfied. (Doc. 10, p. 4).

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.  Under *Hill*, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

Ballard contests the sufficiency of the evidence.  Specifically, he argues that: "The DHO speculated upon the Petitioner's intent based on the out-of-context contents of a letter, which did not express any illegal acts.  The DHO relied on hearsay internet evidence, which was not cited or even validated as credible, to postulate on the Petitioner's intent.  The DHO misconstrued the Petitioner's

testimony, which was only a verification of the description of the incident, as an admission of committing an act." (Doc. 1, p. 7).

According to his report, the DHO relied upon the incident report, the investigation, and a litany of documentary evidence, including a letter handwritten by Ballard soliciting prices for marijuana. The report demonstrates that there was more than "some evidence" to support a finding of guilt. The petition will be denied with respect to the claim that there was insufficient evidence to support the DHO's decision.

Ballard also argues that the DHO "abused [his] discretion, and imposed sanctions of a greater-than-necessary severity level for a Prohibited act." (*Id*.) BOP regulations authorize the imposition of sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.3(a). Prohibited acts under BOP regulations include Greatest Severity Level Prohibited Act Code 196, "Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act." (*Id.,* Table 1). The sanctions that may be imposed upon a finding of guilty of a Greatest Severity Level Prohibited Act include, *inter alia*, forfeiture and/or withholding of earned statutory good conduct time or up to 100% of non-vested good conduct time, and/or termination or disallowance of extra good conduct time, the disallowance of 27-41 days of good conduct time available for a year, up to twelve months of segregation, loss of privileges such as visiting,

telephone, commissary, recreation and a monetary fine.  The sanctions imposed

upon Ballard were clearly within the range of allowable sanctions.  His argument

that the sanctions were arbitrary and lacked sufficient evidence, is wholly without

merit.

## III.   CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus will be

denied.

An appropriate order will issue.